# UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| In re: ) | Case No. 10-74092-SCS |
| ) | |
| CAREY E. WHITLEY, ) | |
| ) | Chapter 7 |
| *Debtor*. ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the Court upon the Motion to Avoid Judgment Lien ("Motion to Avoid") filed by the Debtor, Carey E. Whitley ("Whitley"), to avoid the judicial lien of Terlin Classics, LLC ("Terlin") pursuant to § 522(f) of the United States Bankruptcy Code. The Motion to Avoid was originally set for hearing on June 16, 2011. This hearing was continued to July 21, 2011, on the motion of the representative of Terlin ("Representative") who advised the Court that he had experienced a medical emergency. On July 21, 2011 ("First Continued Hearing"), counsel for Terlin appeared and moved for a second continuance on the grounds the Representative had experienced another medical emergency. Because Whitley had no prior notice of the second motion to continue the Motion to Avoid, the Court heard the evidence of Whitley and continued the matter generally pending presentation to the Court of medical evidence establishing the validity of the medical emergencies of the Representative. A second hearing was conducted on August 25, 2011 ("Second Continued Hearing"), which the Representative attended.[1] Neither Whitley nor Terlin adduced any evidence at the Second Continued Hearing, and the Court received the arguments of counsel for Whitley and Terlin. At the conclusion of the arguments of counsel, the Court took this matter under

---

[1] In the interim between the First Continued Hearing, and the Second Continued Hearing, the Court conducted a hearing on three orders to show cause issued by the Court. Each was dismissed, and they have no substantive impact on the resolution on the merits of the Motion to Avoid.

advisement. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). This Memorandum Opinion constitutes the findings of fact and conclusions of law of this Court pursuant to Federal Rule of Civil Procedure 52, as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7052.

I.   The Motion to Avoid

Carey E. Whitley ("Whitley") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in this Court on August 30, 2010. The Motion to Avoid was filed on April 25, 2011. The Motion to Avoid alleges that the assets of the estate as of the petition date included Whitley's residence located at 200 Ridgeland Drive, Smithfield, Virginia 23430 ("Property"). On Amended Schedule A, filed May 3, 2011, which lists real property, Whitley scheduled the value of the Property as $485,000.00, founded upon an appraised value as of August 30, 2010.[2] The Motion to Avoid further alleges the Property is subject to a first lien deed of trust recorded in July 2007 that secures a promissory note payable to Chase in the original principal amount of $534,500.00 ("Chase Lien"). In the Motion to Avoid, Whitley alleges that $540,000.00 was the balance due on the Chase Lien as of the petition date.

The Motion to Avoid also alleges Terlin holds a judicial lien by reason of a judgment obtained against Whitley in the amount of $96,845.12 with six percent interest from April 7, 2008, the date of judgment.[3] Terlin docketed the judgment in the Circuit Court for Isle of Wight County as a judgment lien against the Property ("Terlin Lien"). Whitley claimed the Property as exempt under

---

[2] Whitley's original Schedule A, filed August 30, 2010, with his petition, lists the value of the Property as $526,000.00 as per an appraisal taken on January 10, 2009.

[3] Whitley's Schedule D lists the lien as wholly unsecured in the amount of $112,000.00.

Va. Code Ann. § 34-4 in the amount of $1.00.[4]

Whitley finally alleges that the he may avoid the Terlin Lien fully as it fully impairs his exemption pursuant to the formula provided for in § 522(f)(2)(A) of the Bankruptcy Code because the Chase Lien valued at $540,000.00 combined with Whitley's claimed exemption for the Property of $1.00 exceeds the value of the Property as of the petition date, which was $485,000.00. Whitley accordingly prays that this Court declare the Terlin Lien to be avoided in its entirety. Terlin filed its Answer to the Motion to Avoid on May 6, 2011, in which Terlin avers that the fair market value of the Property and other factors are matters to be determined by the trier of fact and prays that this Court deny the Motion to Avoid.

At the First Continued Hearing on July 21, 2011, on the Motion to Avoid, the evidence presented included the oral testimony of Whitley and a real estate appraiser. Terlin adduced no evidence at either the First Continued Hearing or the Second Continued Hearing. Because the defenses asserted by Terlin relate solely to contentions concerning the evidence of Whitley, the specific findings of fact of this Court will be further addressed in the context of the conclusions of law herein.

## II.   Conclusions of Law

Section 522(f) of the Bankruptcy Code relied upon by Whitley provides as follows:

> (1) Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is-
>
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)

---

[4] Whitley's total claim of exemptions under Va. Code Ann. § 34-4, as claimed on his amended Schedule C, equals the statutory limit of $5,000.00.

> . . .
>
> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of-
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f) (2011).

Terlin defends on two bases: 1) Whitley did not adduce any admissible evidence of the amount of "all the other liens on the property," which, in this case, is the amount of the Chase Lien; and 2) the testimony of the real estate appraiser as to the value of the Property should be discarded in its entirety because of the manner in which the comparable properties to the Property were selected for calculation of the sales comparable opinion of value. If either of these challenges is correct, Whitley has failed to prove an essential element and may not avoid the Terlin Lien. However, if both of these contentions are incorrect, the Court may proceed to apply the formula set forth in § 522(f) of the Bankruptcy Code and determine if the Terlin Lien should be avoided.

A. Did Whitley Adduce Admissible Evidence as to the Amount of the Chase Lien?

To establish the amount of the Chase Lien, Whitley began by establishing the original principal amount of the loan. Whitley testified that the Property was originally subject to a mortgage loan obtained in 2005 from Washington Mutual and refinanced in 2007 with a loan of approximately $530,000.00 from Chase.[5] This testimony was not objected to by Terlin. Whitley also introduced

---

[5] Whitley testified regarding the refinancing of his mortgage loan with Chase in 2007 as follows:

4

into evidence the original note that he signed with Washington Mutual. Tr. at 10; Whitley Exh. C. Subsequently, to establish the amount of the Chase Lien, Whitley was asked to testify as to the amount he believed was due as of the filing of his Chapter 7 bankruptcy case. *Id.* at 11. Terlin objected on the grounds that Whitley's response would necessarily be founded upon information provided by the bank, which would be hearsay. *Id.* at 11-12. The Court did not rule on Terlin's objection and instead granted Whitley an opportunity to establish a foundation for his knowledge. *Id.* at 12. Whitley initially identified a Chase statement and testified that his practice was to review the monthly statements he receives from Chase for accuracy.[6] Whitley then attempted to introduce the

---

    Q. Do you have a mortgage loan?
    A. Yes, I do.
    Q. Who did you originally obtain a mortgage loan from?
    A. Originally from Washington Mutual.
    Q. When did you obtain your loan from Washington Mutual?
    A. In '05, in 2005.
    Q. When if at all was that loan refinanced?
    A. It was refinanced in 2007.
    Q. What was the approximate principal amount of the 2000 loan that obtained from Washington Mutual?
    A. The 2000?
    Q. The 2007 refinancing.
    A. 2007? 530-.

Transcript, July 21, 2011 Hearing, (hereinafter "Tr."), at 9.

[6] Whitley testified as to his use of his monthly statements from Chase as follows:

Q. Mr. Whitley, can you please turn to behind tab G? Do you recognize this document?
A. Yes, I do.
Q. What do you recognize it to be?
A. It's a monthly statement that I received from Chase.
Q. How did you receive this?
A. By the mail.
Q. Okay. Who is this document addressed from?
A. From Chase.

5

Chase statement into evidence, which drew a hearsay objection from Terlin that was sustained by the Court.[7] *Id.* at 13-14.

Immediately thereafter, Whitley testified as to the amount of the Chase Lien as follows:

> Q. Mr. Whitley, as you had said earlier, you check your statements for accuracy. Have you kept track of the payments -- I mean, not with you today or exact numbers but have you kept track of the -- generally the payments that you've been making to Chase and Washington Mutual on the 2007 note?
> A. Yes.
> Q. Could you give a low ball number in which you are confident that your mortgage payment has not dropped below at any time?
> A. 530,000, and that's the lowest as of a payoff notice that I recently received from Chase. That is the lowest.
> [COUNSEL FOR TERLIN]: Again, Your Honor, nonresponsive to the question.
> THE COURT: I'll overrule the objection.
> Q. I'm sorry, just to be clear, so for [Counsel for Terlin's] satisfaction, if you had to pick a number that you could absolutely say your home loan mortgage has not dropped below, what amount would you give?
> A. $530,000.

*Id.* at 14-15.

Counsel for Terlin cross-examined Whitley as to his assertion of the amount of the Chase Lien:

> Q. A few minutes ago your attorney was asking you about the statements that you receive in section G of the notebinder. So it's clearly your testimony is you believe

---

> Q. How often do you receive statements from Chase bank?
> A. Monthly.
> Q. When you receive a statement from Chase what do you do with the statement?
> A. Well, I look over it for accuracy and, you know, make sure that everything looks apparently correct and then I, you know, write a check to take care of the monthly proceedings.
> Q. Were those steps taken specifically with this exhibit?
> A. Yes.

*Id.* at 12-13.

[7] Whitley later made a second and final attempt to prove the amount of the Chase Lien through the admission of payoff statements identified by Whitley as having been sent by Chase, which drew another hearsay objection from Terlin that was sustained by the Court. *Id.* at 17-18.

>you owe what you owe based on the statements you receive?
>A. I contacted Chase for that accuracy, yes, sir.

*Id.* at 16 (the examination and cross-examination of Whitley is collectively referred to as the "Whitley Testimony").

In closing arguments, Terlin argued that the Whitley Testimony should not have been admitted as it was not founded upon the personal knowledge of Whitley but was instead based upon the Chase statements, which were inadmissible hearsay, making the Whitley Testimony an attempt to improperly "bootstrap" the Chase statements into evidence.[8]

However, during Whitley's direct examination, counsel for Terlin objected on the basis that the Whitley Testimony was "nonresponsive to the question," which objection was overruled.[9] *Id.* at

---

[8] Usually the term "bootstrap" is utilized in reference to the admissibility of hearsay in the context of criminal conspiracy. *See, e.g.*, *United States v. Pineda*, 208 F. Supp. 2d 619, 623 (W.D. Va. 2001) ("[I]t is clear both from the *Lilly* plurality and from earlier cases that the government may not "bootstrap" otherwise unreliable hearsay up to the level of admissible hearsay simply by relying on other evidence.").

[9] In the context of appeals of evidentiary matters, the Ninth Circuit Court of Appeals has concluded not only must a specific objection be lodged, but it must be the correct objection:

>[A] party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, *see United States v. Holland*, 880 F.2d 1091, 1094 (9th Cir. 1989); *United States v. McQuisten*, 795 F.2d 858, 865 (9th Cir. 1986); *United States v. O'Brien*, 601 F.2d 1067, 1071 (9th Cir. 1979), but also by making the *wrong* specific objection, *see, e.g.*, *ESCO Corp. v. United States*, 750 F.2d 1466, 1469-70 (9th Cir. 1985) (objection to testimony on basis of Rule 802 precludes appellant from challenging it on basis of Rule 408); *United States v. Arias*, 575 F.2d 253, 254-55 & n. 2 (9th Cir. [1978]) (objection to testimony on basis of Rule 1002 precludes appellant from challenging it on grounds that it was not made under oath), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *see generally* 1 Wigmore Evidence § 18, at 828 (Tillers rev. 1983) ("A specific objection overruled will be effective to the extent of the grounds specified, and no further. An objection overruled, therefore, naming a ground which is untenable, cannot be availed of because there was another and tenable ground which might have been named but was not.") (footnote omitted); 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 103[02], at 103-24-25 (1989) ("Rule 103 adopts Wigmore's position that a specific

7

14. Subsequently, when Whitley testified to the amount of the Chase Lien, Tr. at 15, counsel for Terlin did not renew his objection from the earlier attempt to establish the amount of the Chase Lien through the testimony of Whitley,[10] object on the basis of lack of personal knowledge,[11] or lodge any objection whatsoever. However, assuming Terlin sufficiently objected to the Whitley Testimony, the issue becomes whether the Whitley Testimony was founded on Whitley's personal knowledge or on the inadmissible Chase statements. Rule 602 of the Federal Rules of Evidence provides the requirement of personal knowledge on the part of a witness:

---

> objection made on the wrong grounds and overruled precludes a party from raising a specific objection on other, tenable grounds on appeal.") (footnotes omitted).

*United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990).

[10] When a court has not issued a definitive ruling on the admissibility of evidence, the objecting party must timely renew his objection to preserve the point. *See United States v. Benavente Gomez*, 921 F.2d 378, 385, n.3 (1st Cir. 1990) (determining that the appellant failed to preserve his point for appeal when the trial court did not rule on the admissibility of a telephone record following the appellant's hearsay objection and he failed to renew the objection when the court admitted the document into evidence later in the trial). Furthermore, when a court reserves its ruling on an objection, it is incumbent upon the objecting party to request final ruling from the court, otherwise the objection is waived and the objecting party is precluded from assigning error on appeal as to admissibility. *See Fenton v. Freedman*, 748 F.2d 1358, 1360 (9th Cir. 1984). Here, when counsel for Whitley first attempted to establish the balance of the Chase Lien through the testimony of Whitley, Terlin objected that the testimony would be based on hearsay, and the Court reserved its ruling on the objection to give Whitley the opportunity to lay a foundation. Tr. at 11-12. During the Whitley Testimony, Terlin only objected that the testimony was "nonresponsive to the question," which was overruled, and did not object thereafter when Whitley testified as to the amount of the Chase Lien. Tr. at 14-15. Terlin failed to renew its earlier objection regarding the basis of Whitley's knowledge of the balance of the Chase Lien during the Whitley Testimony and never requested a final ruling from the Court on the earlier objection.

[11] The Court recognizes that the distinction between the personal knowledge requirement and the hearsay rule is sometimes blurry. However, guidance as to the precise objection to be lodged can be found in "the form of the testimony, whether the witness purports to give the facts directly upon his or her own credit (though it may appear later that the statement was made on the faith of reports from others) or whether the witness purports to give an account of what another has said and this is offered to establish the truth of the other's report." 2 McCormick on Evid. § 247 (6th ed. 2007). However, the Court need not resolve the overlap between the hearsay rule and the personal knowledge requirement to determine what would have been the appropriate objection as

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

Fed. R. Evid. 602. Accordingly, if Whitley had sufficient personal knowledge upon which to base the Whitley Testimony, his testimony is not hearsay. *United States v. Laguerre*, 146 Fed. Appx. 595, 598, 2005 WL 1981511, at *3 (4th Cir. May 12, 2005) ("The rest of the original phone numbers came into evidence through the testimony of Ferguson, who had personal knowledge of calling these numbers, and thus were not hearsay.").

Here it appears the Whitley Testimony is sufficiently founded on his personal knowledge so as to be admissible pursuant to Federal Rule of Evidence 602. In making its determination as to whether a witness has personal knowledge of a matter, the Court must consider whether the witness' testimony is substantially derived from his reference to inadmissible hearsay or, alternatively, if the hearsay evidence is merely ancillary to the witness' first-hand knowledge of the facts and circumstances. In *Elizarras v. Bank of El Paso*, 631 F.2d 373 (5th Cir. 1980), Judge Kravitch suggests that there is a distinction between a party's reliance on the appearance of certain charges on a bank statement and personal knowledge that can be inferred from a party's act of payment:

> At trial appellant objected to the following statement made by appellee: "I paid the $64,000; then $12,800 and twenty-three and something else." Under Fed. R. Evid. 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." The Advisory Committee on the Federal Rules, in its notes on Rule 602, points out that "[t]his rule would prevent (a witness) from testifying to the subject matter of [a] hearsay statement, as he has no personal knowledge of it." The problem in the instant case is that the appellee did not carry the burden Rule 602 puts on him of showing personal knowledge of the matter testified to (although appellant objected on hearsay grounds, not personal knowledge, we will not draw such a fine line). In context, it is clear that as to the penalty and interest appellee was not testifying to any act of payment he

---

Terlin failed to timely make either objection.

>committed, but rather to the fact his account was charged $12,800 and $2,000; thus, this is not an instance where one can infer personal knowledge from the testimony itself. The only basis appellee appeared to have for his testimony concerning the payment of the penalty and interest was the Mexican bank officers' oral assertions and the Mexican bank notice appellant received; yet this evidence had been excluded as inadmissible hearsay.

*Id.* at 373-74. In contrast to the testimony in *Elizarras* where the witness provided no basis for his testimony apart from representations made by bank officers and a bank notice, Whitley's testimony as to the original principal amount of the Chase Lien and the current minimum balance thereof was founded upon his acts of refinancing and repaying the mortgage loan. First, it was Whitley's uncontroverted testimony that the Property was subject to a mortgage loan with Washington Mutual that was obtained in 2005 and refinanced in 2007 with Chase through a loan of approximately $530,000.00. Accordingly, the original principal amount of the Chase Lien was established to be approximately $530,000.00 in 2007 based upon the personal knowledge of Whitley, which can be traced to his participation in the refinancing transaction. Subsequently, in the Whitley Testimony, Whitley testified he had generally kept track of his monthly payments, and the payoff of the Chase Lien had not dropped below $530,000.00.

The fact that Whitley admitted in his direct and cross-examination his reference to the Chase statements to confirm the accuracy of his estimate does not preclude the determination that Whitley's estimate of the payoff of the Chase Lien to be at least $530,000.00 is founded sufficiently upon his personal knowledge of the original amount of the Chase Lien and his general recollection of the payments he has made. In his testimony, Whitley explained that he reviewed the Chase statements for accuracy or, put differently, to verify that the contents were consistent with his estimate of the amount due on the Chase Lien. Subsequently, as to whether the statements formed the basis for his testimony about the outstanding balance, Whitley testified that he "contacted Chase

10

for that accuracy," Tr. at 16, consistent with his previously stated practice of utilizing the statements to confirm the veracity of his understanding. It would be unreasonable for the Court to presume that the appearance of the outstanding balance of a loan on monthly statements received from lender would obviate the independent knowledge of a borrower who applied for a loan, refinanced the debt, and made payments thereon over several years.

Therefore, although the balance due appears on the Chase statements, Whitley's reference to the Chase statements did not establish his knowledge or substantially form the foundation for the Whitley Testimony, and instead served only to supplement and validate his independent knowledge of the amount of the Chase Lien. The evidence presented demonstrates, and the Court specifically concludes, that Whitley's familiarity with the outstanding balance due was derived from his participation as the borrower in the financing transactions and repayment of the loan. As such, the Court can reasonably infer that the Whitley Testimony is based on Whitley's personal knowledge and Federal Rule of Evidence 602 is satisfied. The Whitley Testimony is therefore admissible. In the absence of any other evidence in this record of the balance of the Chase Lien, this Court finds as a matter of fact that the amount of the other liens on the Property is $530,000.00.

B.  Should the Court Disregard the Appraisal Testimony?

The second defense of Terlin challenges the methodology employed by the real estate appraiser, Richard Sparks ("Appraiser"), who testified as to the value of the Property.[12] Specifically, Terlin alleges the Appraiser manipulated the comparable properties he selected to review to establish his opinion of the value of the Property. On direct examination, the Appraiser testified that he determined the appraised value of the Property using the sales comparison approach to valuation,

---

[12] Terlin agreed the Appraiser was qualified as an expert in residential real estate appraisal under Federal Rule of Evidence 702. Tr. at 22.

which was supplemented by a cost approach valuation. Tr. at 23. The sales approach method yielded a value of $485,000.00, and the cost approach yielded a value of $486,700.00. *Id.* Accordingly, the appraisal of the Property ("Appraisal") determined the market value of the Property was $485,000.00 as of August 30, 2010.[13] With respect to the selection of the comparable properties he elected to utilize in the Appraisal, the Appraiser testified on direct examination as follows:

> Q. Approximately how many properties did you review before deciding to use the five comparables that you chose?
> A. Ten to 15.
> Q. Why did you choose the five properties that you chose as opposed to the other properties?
> A. Because of their proximity. Three of them were located on the same water frontage. And for bracketing purposes I used other properties to bracket the square footage estimated value.
> Q. How did you come about the comparables that you used?
> A. By researching the MLS system, city record systems.
> Q. What else if anything did you do besides research the comparables on those systems?
> A. I did a visual inspection of all the comparables, took photos of them, analyzed their views. I also called real estate agents to confirm some data I put in on comparable 3 as to its size.

*Id.* at 24.

The Appraiser was cross-examined as to his selection of the comparable properties utilized by him in the Appraisal and explained his methodology of determining other properties which, in his opinion, are comparable to the Property.[14] On redirect examination, the Appraiser again described

---

[13] The Appraisal was accepted into evidence as Whitley Exhibit K.

[14] The Appraiser's testimony on cross-examination was as follows:

> Q. Mr. Sparks, you considered you said ten to 15 properties?
> A. Yes, sir.
> Q. And you used five?
> A. Yes, sir.
> Q. Off the top of your head do you recall the values -- did you run a valuation of those other properties or see what they had recently sold for? Do you recall doing

12

factors he took into account when selecting comparable properties, which included view, size, and construction quality. *Id.* at 27-28. Thereafter, when Whitley sought admission of the Appraisal, Terlin objected, arguing that the Appraiser testified on cross-examination that he selected comparable properties within a particular value range. *Id.* at 28. The Court overruled Terlin's objection, adding that Terlin's challenge, if valid, would go to the weight of the evidence.[15] *Id.*

The Appraiser does not appear to have "manipulated" the comparable properties he selected for use in determining his opinion of the value of the Property through the sales comparison approach. This Court's assessment of the methodology employed by the Appraiser in selecting comparable properties and the Appraisal reveals no departure from standard appraisal methodology

---

    that?
    A. Yes.
    Q. Okay. Do you recall what those values were?
    A. I was looking for comparable properties within a value range.
    Q. You specifically sought a value range?
    A. Yeah. As you're looking at comparable sales within Smithfield, yes, I was narrowing the range.
    Q. Isn't your duty to find properties that fit similar characteristics and whatever they sold for would be the basis of what you valued this property in question?
    A. Yes, sir.
    Q. So why would you pre-value what you were looking for?
    A. I wasn't pre-valuing. I was trying to determine value on this property.
    Q. This morning your testimony was that you had a certain value range that you sought properties in?
    A. When I start my search I see similar properties that have sold and then I will narrow my search.
    Q. Is it safe to say those other properties did not fit into your predetermined valuation range?
    A. There was no predetermined valuation range.

Tr. at 26-27.

[15] The Appraiser testified on cross-examination that the process of selecting properties with similar characteristics within the relevant community logically results in a narrowing of the valuation range for comparable sales, and he also expressly denied pre-setting a valuation range from which comparables would thereafter be selected. *Id.* Accordingly, Terlin's challenge that the Appraiser selected properties within a specific value range was not well-founded.

used in the evaluation of residential real estate. Furthermore, no other evidence as to the value of the Property was adduced by Terlin or otherwise. Accordingly, finding no "manipulation" by the Appraiser, and no contrary evidence of value of the Property existing in this record, the Court finds as a matter of fact the value of the Property for the purposes of the application of § 522(f) here is $485,000.00.

C.  The Application of § 522(f) to the Facts Established in the Record

Having found based upon the record here that the other liens on the Property are in the amount of $530,000.00, and that the value of the Property is $485,000.00, application of the formula set forth in § 522(f) of the Bankruptcy Code to the circumstances here is somewhat simplistic.

Given the Court's determination of the value of the Property of $485,000.00; the value of the Terlin Lien in the amount of $96,845.12;[16] the determination of the value of the Chase Lien in the amount of $530,000.00, constituting the other lien on the Property; and the undisputed amount of the exemption claimed by Whitley as to the Property of $1.00, the Terlin Lien impairs the exemption in accordance with the statutory formula set forth in § 522(f). The sum of the value of the Terlin Lien of $96,845.12; all other liens on the property which, here, is the value of the Chase Lien of $530,000.00; and one dollar, which is the amount of the exemption that the debtor could claim if there were no liens on the property, totals $626,846.12. This amount exceeds the value that the debtor's interest in the property would have in the absence of any liens, which is valued at $485,000.00, by $141,846.12. Furthermore, the additional provision of § 522(f)(2)(B) that provides

---

[16] A copy of the Abstract of Judgment docketed in the Circuit Court for Isle of Wight County was admitted by the Court as Exhibit D. The Abstract of Judgment lists the amount of the Terlin Lien as $96,845.12, plus six percent interest from the date of judgment, April 7, 2008. Tr. at 7-8. The Terlin Lien is scheduled by Whitley on Schedule D in the amount of $112,000.00, but no evidence was adduced by Whitley to support this amount. Accordingly, the Court, for the purposes of the calculations provided by 11 U.S.C. § 522(f), has utilized the undisputed original

"[i]n the case of a property subject to more than one lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens" is not applicable, as the Chase Lien has not previously been avoided. Also inapplicable is the provision of § 522(f)(2)(C) that provides "[t]his paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure" as Terlin obtained the Terlin Lien by a contract action. Accordingly, by application of § 522(f) of the Bankruptcy Code, the Motion to Avoid Judgment Lien should be granted. By separate Order, the Court shall grant the Motion to Avoid Judgment Lien.

The Clerk is ORDERED to forward a copy of this Memorandum Opinion to Ann B. Brogan and Jonathan A. Grasso, counsel for Whitley; to Raymond B. Bacon, counsel for Terlin; and to Debera F. Conlon, Assistant United States Trustee.

Entered at Norfolk in the Eastern District of Virginia on this 7th day of December, 2011.

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

---

amount of the Terlin Lien of $96,845.12, which is more favorable to the position of Terlin.